APPENDIX[1]

| No. | Petitioner's Requests | Government's Position | Court's Ruling |
|---|---|---|---|
| 1 | Provide all statements of Petitioner that relate to the statements attributed to him in the Factual Return. | Deny | Granted |
| 2 | Specifically, provide the following statements of Petitioner: | | Granted |
| a. | Statements that related to Petitioner's alleged "Islamic extremist background before his capture." | Deny | Granted |
| b. | Statements that related to Petitioner's alleged "evolution as a dedicated terrorist, aspiration for martyrdom and hatred of Israel and the United States." | Deny | Granted |
| c. | Statements that relate to Petitioner's alleged "extensive military training at numerous terrorist training camps in Afganistan, including Khaldan, Sada, al-Faruq, Jihad Wal, and al-Sadiq." | Deny | Granted |
| d. | Statements that relate to Petitioner's alleged training "on various weapons." | Deny | Granted |
| e. | Statements that related to Petitioner's alleged assistance to the "jihadist effort during the civil war in Tajikstan by helping transport weapons from Afghanistan to Tajikstan and by facilitating the training of tajiks at al-Faruq." | Deny | Granted |
| f. | Statements that relate to Petitioner's alleged take over in early 1994 of "the guesthouse in Pakistan connected to the Khaldan training camp." | Deny | Granted |
| g. | Statements that relate to Petitioner's alleged "role" as operator of this guesthouse. | Deny | Granted |
| h. | Statements that relate to Petitioner's alleged meeting "with UBL on numerous occasions in 2000, including discussing Khaldan's closing and whether the mujahideen should unite under one person." | Deny | Granted |
| i. | Statements that relate to Petitioner's | Deny | Granted |

---

[1] This Appendix provides the verbatim language from Petitioner's Appendix of Discovery Requests, ECF No. 405 at 76-112.

| | | | |
|---|---|---|---|
| | alleged engagement "in passport fraud." | | |
| j. | Statements that relate to Petitioner's alleged dedication "to 'two important issues': first, smuggling mujahideen who were specialists in remote-controlled explosives into Israel for operations; and second, an issue he could not write about in his diary because [it] . . . 'might fall in[to] the hands of other people." | Deny | Granted |
| k. | Statements that relate to Petitioner's alleged "role as a terrorist facilitator." | Deny | Granted |
| l. | Statements that relate to Petitioner's alleged responsibility "for the Khaldan training camp expenses." | Deny | Granted |
| m. | Statements that relate to Petitioner's alleged "deep hatred for the United States, as well as Israel." | Deny | Granted |
| n. | Statements that relate to Petitioner's alleged travel to Afghanistan in 2001 "carrying $50,000 for operations against Israel." | Deny | Granted |
| o. | Statements that relate to Petitioner's alleged expression of "unity" with "the purpose" of Al Qaeda. | Deny | Granted |
| p. | Statements that relate to Petitioner's alleged "knowledge of UBL's whereabouts and entourage after the Battle of Tora Bora." | Deny | Granted |
| q. | Statements that relate to Petitioner's alleged submission to "submit[]the requisite paperwork to join al-Qaida and pledge *bayat* but his application had been rejected." | Deny | Granted |
| r. | Statements that relate to Petitioner's alleged "happiness" after the attacks of September 11. | Deny | Granted |
| s. | Statements that relate to Petitioner's alleged work in Afghanistan after September 11, 2001 for "UBL's" military and security plan to confront an American counterattack." | Deny | Granted |
| t. | Statements that relate to Petitioner's alleged relocation to Kandahar by November 2001. | Deny | Granted |
| u. | Statements that relate to Petitioner's | Deny | Granted |

| | | | |
|---|---|---|---|
| | alleged work in Kandahar "collecting weapons and then distributing." | | |
| v. | Statements that relate to Petitioner's alleged work in Kandahar "on a security patrol around the city, until dawn, inside a vehicle." | Deny | Granted |
| w. | Statements that relate to Petitioner's alleged "wish for martyrdom." | Deny | Granted |
| x. | Statements that relate to Petitioner's alleged "wish[] to see America's fall and destruction, and the destruction of the state of Israel, and I wished to torture and kill them myself with a knife." | Deny | Granted |
| y. | Statements that relate to Petitioner's alleged attendance "at a meeting in late November with representative from the Taliban to discuss the situation" in Kandahar. | Deny | Granted |
| z. | Statements that relate to Petitioner's alleged "role in facilitating the retreat and escape of enemy forces" from Afghanistan. | Deny | Granted |
| aa. | Statements that relate to Petitioner's alleged role in "arranging a ransom for the release of two groups of mujahideen . . . captured by Pakistan or Afgani tribal members." | Deny | Granted |
| bb. | Statements that relate to Petitioner's alleged relocation by the end of February 2002 "to Lahore, Pakistan, and by late March 2002, . . . to Faisalabad, Pakistan. | Deny | Granted |
| cc. | Statements that relate to Petitioner's alleged movement "[d]uring this time . . . from safehouse to safehouse with different groups." | Deny | Granted |
| dd. | Statements that relate to Petitioner's alleged decision to organize "a cell" for future terrorist activity after September 11. | Deny | Granted |
| ee. | Statements that relate to Petitioner's alleged plans for a "potential terrorist operation in the United States." | Deny | Granted |
| ff. | Statements that relate to Petitioner's alleged decision in 2000 "that it was the right time to wage was against | Deny | Granted |

| # | | | |
|---|---|---|---|
| | America." | | |
| 3 | Training materials allegedly found at the Faisalabad House where Petitioner was arrested. | Deny | Granted |
| 4 | Passports allegedly found at Faisalabad House. | Deny | Granted |
| 5 | Computer allegedly found at Faisalabad House were Petitioner was arrested. | Deny | Granted |
| 6 | Electronic parts and an "electronic gun" found at Faisalabad House where Petitioner was arrested. | Deny | Granted |
| 7 | Document containing Ghassan Al-Sharbi's phone number. | Deny | Granted |
| 8 | Redacted. | | Held in Abeyance |
| 9 | Redacted. | | Held in Abeyance |
| 10 | Redacted. | | Held in Abeyance |
| 11 | Handwritten training manual found near Derunta Camp. | Deny | Granted |
| 12 | Provide all evidence contained within Petitioner's statements which "tends to materially undermine the information presented to support" each of the government's accusations against Petitioner. | Deny | Granted |
| 13 | Provide all evidence contained within Petitioner's statements in whatever form maintained, tending to undermine Respondent's assertions that: | | |
| a. | Petitioner was part of, associated with, supported, or took orders from al Qaeda or that he supported Osama bin Laden. | Deny | Granted |
| b. | Petitioner, or the Khalden camp with which he was allegedly affiliated, trained individuals to undertake terrorist attacks against the United States or its allies or coordinated and cooperated with al Qaeda camps for terrorist training. | Deny | Granted |
| c. | Petitioner knew of or supported specific terrorist operations against the United States or its allies. | Deny | Granted |
| d. | Petitioner either planned to create or created a terrorist cell or planned to participate in or participated in a plot | Deny | Granted |

| | | | |
|---|---|---|---|
| | to manufacture IEDs. | | |
| e. | Petitioner assisted "enemy forces" in their escape from Afghanistan in 2001 or in hostilities against the United States and Coalition forces. | Deny | Granted |
| 14 | Provide all statements or writings by Petitioner evidencing that U.S. interrogators or other government officials acknowledged to Petitioner that he was not a member of Al Qaeda and did not support its ideology or actions, including the attacks of September 11, 2001, or that the U.S. government's initial assessments about Petitioner had been incorrect. | Deny | Granted |
| 15 | Provide all evidence of the circumstances, in whatever form maintained, under which Petitioner made exculpatory statements to the government, including evidence revealing the method and manner of the "enhanced interrogation techniques" employed on Petitioner when such statements were made. | Deny | Granted |
| 16 | The "complete file" on Ahmed Ressam, as contemplated by Judge Bates in *Al-Ghizzawi v. Obama*, 05-2359 [Dkt # 198] (D.D.C. Mar 2, 2009) (ordering a variety of exculpatory information on accusers). This includes general credibility assessments regarding Ressam; recantations, evidence of inducements or promises of favorable treatment; evidence that Ressam was subjected to torture, coercion or coercive conditions of confinement; evidence that Ressam suffers or suffered from a mental illness or instability; evidence that Ressam provide false and/or incorrect accusations about other detainees; evidence that the government has questioned Ressam's credibility in any way. *Id.* This also includes exculpatory evidence that about Ressam that has been ordered disclosed in other cases, *see, e.g., Zemiri v. Obama*, 2009 WL 311858, at *1-2 (Feb. 9, 2009) (ordering | Deny | Granted in Part and Denied in Part |

| | | | |
|---|---|---|---|
| | disclosure of information concerning Ressam that the Canadian government previously provided to the U.S. government; cooperation agreements and related correspondence; and exculpatory evidence that was provided to defense counsel in *United States v. Haouari*). | | |
| 17 | Evidence that casts doubt on the reliability of particular statements attributed to Ressam, including the following: | | |
| a. | Evidence tending to undermine Ressam's accusation that Petitioner was "the top guy" or "in charge" of "moving persons who came to Pakistan/Afghanistan for training and for assisting with their papers, money, or providing safe harbor at a guesthouse," including, e.g., information that other persons were responsible for providing services. | Deny | Granted |
| b. | Evidence tending to undermine Ressam's allegation that Petitioner was responsible for trainee movements between Khalden and other camps. At a minimum, this would include an unredacted copy of the almost entirely redacted Feb. 7, 2007 interrogation of Petitioner, in which Petitioner makes a redacted statement regarding who was responsible for transferring trainees to other training camps. | Deny | Granted in Part and Denied in Part |
| c. | Evidence tending to undermine Ressam's allegation that Petitioner facilitated and/or provided assistance to persons who were involved in terrorist training or operations, including, e.g., evidence tending to undermine Ressam's allegation that Petitioner provided safe harbor to three Saudis (Tamin, abdul Karmin, and Muqatil), who allegedly trained at al Qaeda camps. | Deny | Granted in Part and Denied in Part |
| d. | Evidence tending to undermine Ressam's allegation that Khalden was associated with al Qaeda or the Taliban, provided training for "terrorist operations" generally or against the United States or its coalition partners, taught is | Deny | Granted |

| | | | |
|---|---|---|---|
| | members that the United States was a "viable target;" encouraged its members to undertake suicide bombings (including that Muhajir al-Masri was a trainer who encouraged suicide missions); provided courses on explosives, urban warfare, assassinations, and/or other alleged terrorist tactics; or that weapons, training and/or equipment at Khalden was provided to or by al Qaida or the Taliban. | | |
| e. | Evidence tending to undermine Ressam's allegation that Petitioner "coordinated and cooperated with Usama bin Laden in the conduct of training and training movements between their camps," including evidence demonstrating any such role was undertaken by other persons (e.g., Ibin al-Sheik al-Libi). | Deny | Granted |
| f. | Evidence tending to undermine Ressam's allegation that Petitioner selected, or knew who was selected, to leave Khalden for training at al Qaeda camps. | Deny | Denied |
| g. | Evidence tending to undermine Ressam's claim that Petitioner supported, encouraged or know that Ressam was planning to undertake a terrorist operation in the United States. | Deny | Granted |
| h. | Evidence tending to undermine Ressam's accusation that Petitioner was responsible for Ressam's travel to or affiliation with a training camp in Derunta, Afghanistan, and that this camp was operated by or associated with al Qaeda or the Taliban. | Deny | Granted in Part and Denied in Part |
| i. | Evidence tending to undermine Ressam's assertion that Petitioner was responsible for financing the Khalden camp or financing particular terrorist operations asserted to have connections to the Khalden camp. | Deny | Granted in Part and Denied in Part |
| j. | Evidence tending to undermine Ressam's assertion that the following extremist groups "trained" at Khalden: al Qaeda; Egyptian Islamic Jihad; Armed Islamic Group (GIA); Salafite Group for Preaching and Fighting; Hamas; and | Deny | Granted in Part and Held in Abeyance in Part |

| | | | |
|---|---|---|---|
| | Hizballah, including, e.g., information indicating that Petitioner refused or declined to "facilitate" the movement of persons affiliated with these groups into Afghanistan and/or the Khalden camp. At a minimum, this would include an unredacted copy of the almost entirely redacted document [REDACTED]. This would also include a prior statement of Ressam referenced in Ressam 302, 1/17/2002 at 16, but not disclosed to Petitioner [REDACTED]. | | |
| 18 | The "complete file" on Owahali, as contemplated by Judge Bates in *Al-Ghizzawi v. Obama*, 05-2359 [Dkt # 198] (D.D.C. Mar 2, 2009) (ordering a variety of exculpatory information on accusers). | Deny | Granted in Part and Denied in Part |
| 19 | Evidence tending to show that al Owahali did not train at Khalden, that al Owahali trained at camps other than Khalden, and that Petitioner did not know of any planned attacked on the U.S. Embassies. | Deny | Granted in Part and Denied in Part |
| 20 | Redacted. | | Held in Abeyance |
| 21 | Redacted. | | Held in Abeyance |
| 22 | The "complete file" on Husayn al Qahtani, as contemplated by Judge Bates in *Al-Ghizzawi v. Obama*, 05-2359 [Dkt # 198] (D.D.C. Mar 2, 2009) (ordering a variety of exculpatory information on accusers). | Deny | Granted in Part and Denied in Part |
| 23 | Evidence that undermines al-Qahtani's credibility; evidence that undermines the otherwise unsubstantiated claim that al-Qahtani fought on the "front lines" with the Taliban; evidence tending to undermine al-Qahtani's designation as an "enemy combatant" that has been provided to his habeas counsel; and evidence that tends to demonstrate that Petitioner did not support or was not aware of any alleged terrorist activity and/or plans of al-Qahtani. | Deny | Granted in Part and Denied in Part |
| 24 | The "complete file" on both Rabbani brothers, as contemplated by Judge Bates | Deny | Granted in Part |

| | | | |
|---|---|---|---|
| | in *Al-Ghizzawi v. Obama*, 05-2359 [Dkt # 198] (D.D.C. Mar 2, 2009) (ordering a variety of exculpatory information on accusers). | | and Denied in Part |
| 25 | Evidence that tends to undermine the credibility or reliability of [the Rabbani Brothers'] statements; evidence that otherwise undermines the assertion that these detainees had contacts with and knowledge of al Qaeda leadership; evidence that tends to demonstrate that Petitioner was not aware of and/or did not support these detainees' connections with al Qaeda and/or Khalid Sheikh Mohammed. | Deny | Granted in Part and Denied in Part |
| 26 | The "complete file" regarding [REDACTED], as contemplated by Judge Bates in *Al-Ghizzawi v. Obama*, 05-2359 [Dkt # 198] (D.D.C. Mar 2, 2009) (ordering a variety of exculpatory information on accusers). | Deny | Granted in Part and Denied in Part |
| 27 | Evidence that casts doubt on the reliability of particular statements/allegations by [REDACTED] that are relied on by Respondent, including the following: | Deny | Granted |
| a. | Evidence tending to undermine [REDACTED] statement indicating that he was a trainer, on-site director, or leader of the Khalden training camp. | Deny | Granted |
| b. | Evidence tending undermine [REDACTED] statement indicating that he met with Petitioner to discuss Khladen's closure and maintained frequent contact with Petitioner after Khalden's closure. | Deny | Granted |
| c. | Evidence tending to undermine [REDACTED] statement indicating that, after Khalden closed, he became a Taliban commander. | Deny | Granted |
| d. | Evidence tending to undermine [REDACTED] allegation that he observed people coming to the Faisalabad house to pick up their passports and other travel documents, and/or that Petitioner handled these documents for people at the Faisalabad house. | Deny | Granted |
| 28 | The "complete file" on abu Kamel al Suri, as contemplated by Judge Bates in | Deny | Granted in Part |

| | | | |
|---|---|---|---|
| | *Al-Ghizzawi v. Obama*, 05-2359 [Dkt # 198] (D.D.C. Mar 2, 2009) (ordering a variety of exculpatory information on accusers). | | and Denied in Part |
| 29 | Evidence that casts doubt on the reliability of particular statements from al Suri and relied upon by Respondent, including the following: (Mot., ECF No. 405 at 21-26). | | |
| a. | Evidence tending to undermine al Suri's assertion that he was a close associate of Petitioner and/or traveled with Petitioner on January 2002 until Petitioner's capture. | Deny | Granted Part and Denied in Part |
| b. | Evidence tending to undermine al Suri's allegation that Petitioner owned a Samsonite briefcase which held documents outlining Petitioner's future plans, including information tending to suggest that the contents of the briefcase had no relation to any terrorist operations. | Deny | Granted in Part and Denied in Part |
| c. | Evidence tending to undermine al Suri's allegation that Petitioner advised al Suri to join Adl al Hadi al Iraqi and/or al Qaeda, and/or that such advice was intended as an expression of support for Osama bin Laden. | Deny | Granted |
| d. | Evidence tending to undermine al Suri's allegation that Petitioner and Adb al Hadi al Iraqi met at a madrassa in Bermil where they discussed and set in motion a plan to manufacture IEDs. | Deny | Granted |
| e. | Evidence tending to undermine al Suri's allegation that Jabran al Qahtanie and Ghassan al Sharbi were undergoing training at the house in Faisalabad for operations against the Americans. | Deny | Granted |
| g. | Evidence tending to undermine al Suri's allegation that, in February 2002, Petitioner was trying to find a location to house a group tat would carry out terrorist missions. | Deny | Granted |
| h. | Evidence tending to undermine al Suri's allegation that the people at the Fasialabad house were training and preparing for martyrdom operations to destroy Americans or Israelis. | Deny | Granted |

10

| | | | |
|---|---|---|---|
| i. | Evidence tending to undermine al Suri's allegations that in March 2002, Petitioner was about to begin terrorist operations, including denials and/or contradictory statements obtained from any of the fifteen people listed in al Suri's diary as being part of Petitioner's "core group." | Deny | Granted in Part and Denied in Part |
| j. | Evidence tending to undermine al Suri's allegation that at least two persons staying at the Faisalabad house were training on electronics to be used in operations against the Americans inside Afghanistan. | Deny | Granted |
| 30 | The "complete file" on Sayf al-Adl, as contemplated by Judge Bates in *Al-Ghizzawi v. Obama*, 05-2359 [Dkt # 198] (D.D.C. Mar 2, 2009) (ordering a variety of exculpatory information on accusers). | Deny | Granted in Part and Denied in Part |
| 31 | | | |
| a. | Evidence obtained from Sayf al-Adl, tending to undermine Respondent's allegation that Petitioner was a close associate of Osama bin Laden and/or actively supported al Qaeda, including, e.g., Sayf al-Adl's inability to identify Petitioner as a close associate of Osama bin Ladin and/or an al Qaeda facilitator, supporter, or operative. *See, e.g.,* *Abdallah v. Obama*, 08-1923 (GK) [Dkt # 129] (D.D.C. Aug. 25, 2009) (ordering disclosure of negative identifications). | Deny | Granted |
| b. | Information tending to show that Sayf al-Adi and Petitioner had an antagonistic and/or non-cooperative relationship, including information regarding the assertion that "Sayf al-Adl and abu Mohammad al-Masri and those with them [we]re trying to take over [Zubaydah's group]" around March 2002. Respondent's Factual Return at 23. | Deny | Denied |
| 32 | Evidence tending to indicate that [Kazimi, Royadh, and Mohammed Rabbani] had no connection to Petitioner, and/or that Petitioner had no knowledge of their supposed connection to Osama bin | Deny | Denied |

| | | | |
|---|---|---|---|
| | Laden. | | |
| 33 | Evidence obtained from [Kazimi, Royadh, and Mohammed Rabbani] tending to undermine Respondent's allegation that Petitioner was a close associate of Osama bin Ladin and/or actively supported al Qaeda, including their inability to identify or name Petitioner as a close associate of Osama bin Laden and/or an al Qaeda facilitator, supporter, or operative. *See, e.g., Abdallah v. Obama*, 08-1923 (GK) [Dkt # 129] (D.D.C. Aug. 25, 2009)(ordering disclosure of negative identifications). | Deny | Granted |
| 34 | The "complete file" regarding [REDACTED],as contemplated by Judge Bates in *Al-Ghizzawi v. Obama*, 05-2359 [Dkt # 198] (D.D.C. Mar 2, 2009) (ordering a variety of exculpatory information on accusers). | Deny | Granted in Part and Denied in Part |
| 35 | Evidence that tends to undermine the credibility or reliability of [REDACTED]. | | |
| a. | Evidence tending to undermine [REDACTED] statement that he traveled to Afghanistan after the September 11, 2001 attached to fight the U.S. and Northern Alliance. | Deny | Granted |
| b. | Evidence tending to undermine [REDACTED] statement that he traveled to Afghanistan after the September 11, 2001 attacks with al Qaeda's assistance. | Deny | Granted |
| c. | Evidence tending to undermine [REDACTED] statement that he engaged in hostilities on the front line, fighting against the Northern Alliance. | Deny | Granted |
| d. | Evidence tending to undermine [REDACTED] alleged avowal to return immediately to Afghanistan to fight against the U.S. if ever released from U.S. custody. | Deny | Granted |
| e. | Evidence tending to undermine [REDACTED] allegation that Petitioner tasked him with constructing circuit boards, which were to be used as timing devices in bombs deployed against Coalition forces in Afghanistan. | Deny | Granted |
| f. | Evidence tending to undermine [REDACTED] | Deny | Granted |

12

| | | | |
|---|---|---|---|
| | statement that he was a bomb-maker and/or was experienced in constructing explosives, including evidence from prior draft reports, prior interrogator and analyst notes and recent interrogations which underly document IIR 6 034 1126 03 (summarizing, but not detailing, exculpatory statements from al-Quhtani). | | |
| g. | Evidence tending to undermine [REDACTED] allegation that he learned of electronics in the Fasialabad house during the raid. | Deny | Granted |
| h. | Evidence tending to undermine [REDACTED] allegation that Petitioner was assisting him in having his passport fixed while he stayed at the Faisalabad house. | Deny | Granted |
| 36 | The "complete file" regarding Barhoumi Sufiyan, as contemplated by Judge Bates in *Al-Ghizzawi v. Obama*, 05-2359 [Dkt # 198] (D.D.C. Mar 2, 2009) (ordering a variety of exculpatory information on accusers). | Deny | Granted in Part and Denied in Part |
| 37 | Evidence that casts doubt on the reliability of particular statements/allegations by Sufiyan that are relied on by Respondent, including the following: | | |
| a. | Evidence tending to undermine Sufiyan's statement that he received "terrorist training" at Khalden and other camps near Jalabad. | Deny | Granted |
| b. | Evidence tending to undermine Sufiyan's statement indicating that he trained "terrorists" at a camp near Jalabad. | Deny | Granted |
| c. | Evidence from Sufiyan tending to undermine the government's allegation that an IED plot existed in which Petitioner was involved. | Deny | Granted |
| 38 | The "complete file" regarding Ghassan al-Sharbi, as contemplated by Judge Bates in *Al-Ghizzawi v. Obama*, 05-2359 [Dkt # 198] (D.D.C. Mar 2, 2009) (ordering a variety of exculpatory information on accusers). | Deny | Granted in Part and Denied in Part |
| 39 | Evidence that casts doubt on the reliability of particular | | |

| | | | |
|---|---|---|---|
| | statements/allegations by al-Sharbi that are relied upon by Respondent, including the following: | | |
| a. | Evidence tending to undermine al-Sharbi's statement indicating that he knows Osama bin Laden personally. | Deny | Granted |
| b. | Evidence tending to undermine al-Sharbi's statement that he has taken up arms against the United States and is an enemy of the United States. | Deny | Granted |
| c. | Evidence from al-Sharbi tending to undermine the government's allegation that an IED plot existed in which Petitioner was involved. | Deny | Granted |
| 40 | The "complete file" regarding Binyam Mohammad, as contemplated by Judge Bates in *Al-Ghizzawi v. Obama*, 05-2359 [Dkt # 198] (D.D.C. Mar 2, 2009) (ordering a variety of exculpatory information on accusers). | Deny | Granted in Part and Denied in Part |
| 41 | Evidence that casts doubt on the reliability of particular statements/allegations by Binyam Mohammad that are relied on by Respondent, including the following: | | |
| a. | Evidence tending to undermine Binyam's allegation that Jabran al-Quhtani is a terrorist. | Deny | Granted |
| b. | Evidence tending to undermine Binyan's allegation that Petitioner and Abd al Hadi Iraqi met at a madrassa in Bermil, where al-Hadi tasked Petitioner with finding recruits to train in the manufacture of IEDs. | Deny | Granted |
| c. | Evidence tending to undermine Binyam's allegation that al Hadi and Petitioner met with Jabran, Binyam, and Ghassan al Sharbi at a madrassa in Bermil, where they were chosen to participate in the "IED plot." | Deny | Granted |
| d. | Evidence tending to undermine Binyam's allegation that Barhoumi Sufiyan, as the resident explosives expert at the Faisalabad house, was chosen to provide explosives and electronic detonation training to people at the safehouse, including Jabran, Binyam, and Ghassan. | Deny | Granted |

| 42 | The "complete file" regarding [REDACTED], as contemplated by Judge Bates in *Al-Ghizzawi v. Obama*, 05-2359 [Dkt # 198] (D.D.C. Mar 2, 2009) (ordering a variety of exculpatory information on accusers). | Deny | Granted in Part and Denied in Part |
|---|---|---|---|
| 43 | Evidence that casts doubt on the reliability of particular statements/allegations by [REDACTED] that are relied on by Respondent, including evidence obtained from [REDACTED] tending to undermine Respondent's allegation that Petitioner was associated with al Qaeda, met Adi al Hadi al Iraqi in Bermil, and/or was carrying out an IED plot, including, e.g., evidence of [REDACTED] "negative identifications" of Petitioner as an al Qaeda associate or associate of al Hadi al Iraqi. | Deny | Granted |
| 44 | Any documents or statements by government officials, in whatever form, reflecting a belief or conclusion that the government's initial assessments about Petitioner's association with Al Qaeda or responsibility for terrorist operations were incorrect or exaggerated, or otherwise reflecting a view that Petitioner was not in fact associated with, a supporter of, part of, or a member of al Qaeda or terrorist operations against the United States or its allies. | Deny | Granted |
| 45 | Any statements or conclusions by any of Petitioner's interrogators including CIA [redacted] in whatever form, indicating that Petitioner was not associated with al Qaeda or terrorist operations against the United States or its allies. | Deny | Granted |
| 46 | Evidence tending to undermine Respondent's assertion that Petitioner was the "key facilitator" of the Khalden guesthouse or was a "terrorist facilitator" by his operation of a guesthouse in Pakistan, including that Petitioner was assisting in the movement of persons to and from Khalden in order | Deny | Granted |

| | | | |
|---|---|---|---|
| | that they could receive training to carry out terrorist missions. | | |
| 47 | Information, including instructional material used at Khalden in the government's possession, which undermines Respondent's allegation that the training provided at Khalden was "terrorist training." *See, e.g.* IIR 6 035 151 05 (in which ISN 200 states that no explosives, kidnapping, or terrorist attack training was offered at Khalden); *see also* Decl. [REDACTED] (indicating that at least one terrorist training manual had been "recovered" by the government). This would include, *i.e.*, information indicating that the training material used at Khalden was not uniquely geared toward "terrorist operations." *See e.g.*, Petitioner's unclassified CSRT transcript (in which Petitioner states that the training materials used at Khalden were old copies of U.S., Russian, and other national military manuals). | Deny | Granted |
| 48 | Information tending to show that Khalden, Sada, al-Faruq, Jihad Wal, and al-Sadiq camps did not provide "terrorist training" during the time that Petitioner allegedly attended them and/or that these camps had not engaged in any terrorist operations against the United States or identified the United States as its enemy at that time. | Deny | Granted in Part and Denied in Part |
| 49 | Information from persons believed to be drivers for the Khalden camp, including Saleh Sofian and Sarolah Zafar, who would have told U.S. interrogators that Khalden was not in the practice of transferring persons to al Qaeda camps. | Respondent does not object. | Granted |
| 50 | Information tending to demonstrate that Khalden and al Qaeda camps were organizationally and operationally independent as a result of their different ideologies about jihad. This includes an unredacted classified version of Petitioner's CSRT transcript and supporting documents, as well an | Deny | Granted in Part and Denied in Part |

16

| | | | |
|---|---|---|---|
| | information tending to show that membership in Khalden was premised upon an interest in "defensive jihad" rather than al Qaeda's view of "offensive jihad," as well as documents demonstrating that persons expressing an interest in terrorist operations were denied entrance to Khalden. *See e.g., al-Adahi v. Obama*, 05-280 (GK) [DKT #317] (D.D.C. Mar. 26, 2009) (ordering disclosure of any formal requirements or procedures for becoming a member of a group to which Petitioner is alleged to belong). | | |
| 51 | Allegations about Petitioner that the government has asserted in other habeas cases which are inconsistent with those lodged in the present case, including, e.g., the allegation that Petitioner is an al Qaeda military commander or lieutenant (see, e.g., Soufiyan Factual Return at 12), and e.g., the allegation that Petitioner was in charge of a ring of guesthouses that were simultaneously raided in Faisalabad (see e.g., Crescent Mills (Issa) House Declaration, June 23, 2009, *Al-Harbi v. Obama*, 05-2479 (HHK) (asserting that "Issa House was part of a network of safe houses led by Abu Zubaydah"). | Deny | Granted |
| 52 | Evidence revealing that the United States and its allies encouraged, supported and/or otherwise approved of the training of Khalden trainees for fighting against the communist insurgents in Afghanistan or in Chechnya. | Deny | Granted in Part and Denied in Part |
| 53 | Evidence suggesting that Khalden was funded, sponsored or supported by Jordanian or Saudi Arabian intelligence services. *See e.g.,* Summary Intelligence Report of Bin Hamlili adil Hadi al Jazairi, ISN 1452, Nov. 10, 2006 (reporting statement of detainee that Khalden was sponsored by Jordanian and Saudi intelligence, that a Saudi ran the camp, and that Petitioner could not have | Deny | Denied |

| | | | |
|---|---|---|---|
| | run Khalden because he was "crazy" as a result of his head injury); *see also* Petitioner's Diary vol 4, at 20 (revealing suspicion that Khalden was controlled by Saudi security services). | | |
| 54 | Evidence tending to undermine the credibility or reliability of Petitioner's diary, including, e.g., medical or mental health evaluations tending to indicate that Petitioner suffered from a mental illness and/or other cognitive impairment during the time of the diary's writing. | Deny | Granted |
| 55 | Evidence tending to indicate that Petitioner's diary has been altered, damaged, or otherwise redacted in any way since Petitioner's arrest, *see e.g.*, English translations of Petitioner's diary (indicating "missing text") as well as an opportunity to review the original Arabic versions of Petitioner's writings. | Deny | Found as Moot |
| 56 | Evidence tending to undermine Respondent's interpretation of Petitioner's diary, including evidence that the government has concealed or otherwise made assessments that the portions of Petitioner's diary relied upon by Respondent are historically inaccurate and/or unable to be substantiated, *see e.g.*, Ron Suskind, *The One Percent Doctrine* (quoting FBI agent Dan Coleman's impressions after reviewing Petitioner's diary that it was "blather"), as well as evidence tending to suggest an alternate reading of or explanation for entries in Petitioner's diary, other than the one proffered by Respondents in the narrative of their Factual Return, including, *e.g.*, evidence that Petitioner's diary was written in multiple voices and/or was not meant to be read literally, *see e.g.*, *id.* (indicating that Petitioner's diary was written from at least three different perspectives or personalities); and any evidence tending | Deny | Granted |

| | | | |
|---|---|---|---|
| | to indicate that the diary entries were not factually correct reports of events and/or were not reports of actual events. | | |
| 57 | Evidence tending to show that Petitioner financed activities other than terrorism and/or that Petitioner was, in turn, financed by individuals or entities that are not adverse to the interests of the United States or Coalition forces. | Deny | Denied |
| 58 | Evidence that casts doubt on the reliability of particular statements made by Petitioner and relied upon by Respondents in connection with [the allegation that Petitioner was associated with and supported Osama Bin Ladin and al Qaeda], including the following: | | |
| a. | Evidence tending to undermine Respondents' assertion that Petitioner met with Osama bin Ladin on multiple occasions and/or that Petitioner did so willingly or at his own initiative. | Deny | Granted in Part and Denied in Part |
| b. | Evidence tending to undermine Respondents' assertion that Osama bin Ladin proposed unity with Petitioner and/or between Petitioner and other terrorist groups. | Deny | Granted |
| c. | Evidence tending to undermine Respondent's insinuation that Petitioner joined in unity with Osama bin Ladin and/or other terrorist groups, or tending to undermine Respondents' allegation that Petitioner coordinated and cooperated with them in conducting terrorist training or operations. | Deny | Granted |
| d. | Evidence tending to undermine Respondents' assertion that Petitioner knew where Osama bin Ladin was hiding in November 2000 shortly after the USS Cole bombing. | Deny | Granted |
| e. | Evidence tending to undermine Respondents' assertion that Petitioner made a video intending to show support for Osama bin Ladin and/or to show support for terrorist operations connected to al Qaeda, including the | Deny | Granted |

| | | | |
|---|---|---|---|
| | 1998 Embassy bombings, the 2000 USS cole bombing, and/or September 11, 2001 attacks, including, *e.g.*, evidence that the video was intended for a different purpose. | | |
| f. | Evidence tending to undermine Respondents' assertion that Petitioner's repeated denials that he was a member of al Qaeda "appears to be based on the fact that he never pledged bayat," including evidence tending to show that Petitioner's denials were based on other factors. At a minimum, this includes full disclosure of all of the repeated denials at issue. | Deny | Granted |
| g. | Evidence tending to undermine Respondents' assertion that Petitioner submitted "the requisite paperwork" to join al Qaeda and swear bayat and/or that Petitioner's application to join al Qaeda and swear bayat was considered and/or denied. | Deny | Granted |
| h. | Evidence tending to underling Respondent's assertion that Petitioner had knowledge of Osama bin Ladin's whereabouts and entourage after the Battle of Tora Bora. | Deny | Granted |
| 59 | Disclose a copy of the e-mail Petitioner sent to a religious scholar following the attacks on September 11, 2001, referred to by Petitioner in his CSRT hearing, in which he sought support for his belief that the terrorist attacks of September 11, 2001, are not condoned by Islam and that Osama bin Laden and al Qaeda were mistaken to have launched them. | Deny | Granted |
| 60 | Disclose evidence indicating that Osama bin Ladin closed the Khalden camp because Khalden refused to follow his leadership and/or as an attempt to put pressure on the Khalden camp to follow his leadership. *See.*, *e.g.*, Decl. [REDACTED] | Government's response is partially redacted | Held in Abeyance |
| 61 | Disclose evidence indicating that the Taliban was antagonistic towards Khalden for years prior to its closing because | Government's Response is partially | Held in Abeyance |

| | | | |
|---|---|---|---|
| | the Taliban supported Osama bin Ladin while Khalden did not. *See e.g.,* Petitioner's Diary Vol. 5 at [18] (indicating that for many years the Taliban placed restrictions on Khalden "for the sake of Osama bin Ladin"). | redacted | |
| 62 | Disclose evidence indicating that Petitioner was angry with, disliked, or otherwise was in disagreement with Osama bin Ladin because bin Ladin called for the closing of Khalden and/or that Petitioner and/or Khalden did not agree to follow bin Ladin once Khalden was closed. *See, e.g.,* Petitioner's unclassified CSRT transcript at 18. | Deny | Denied |
| 63 | Disclose evidence indicating that Petitioner, Ibin Sheik al-Libi, and/or the leader of Khalden refused Osama bin Ladin's invitations to unite under al Qaeda leadership as we an information regarding Ibin Sheik al-Libi's disagreement with the philosophy and/or methods of Osama bin Ladin and/or al Qaeda. *See* [REDACTED] 302 11/4/2002 (indicating al-Libi did not agree with al Qaeda's "radical tactics"). | Deny | Denied |
| 64 | Any evidence obtained from Ibin Sheikh al-Libi provided after his arrest that tends to support that Petitioner was not a member of al Qaida, was not a member of the Taliban, and that the Khalden training camp was not associated with the same. | Deny | Granted in Part and Denied in Part |
| 65 | Disclose evidence tending to suggest that access to Osama bin Ladin and/or knowledge of his whereabouts during the time period of Petitioner's alleged meetings with him was commonplace and/or was not limited to persons who were members of, supportive or, or closely associated with al Qaeda. *See e.g.,* [REDACTED] 302 11/25/2002 (indicating that it would not be "unusual" for someone to have met Osama bin Ladin). | Deny | Denied |
| 66 | Disclose information tending to demonstrate that Petitioner had no knowledge of terrorist operations and/or | Deny | Denied |

21

| | | | |
|---|---|---|---|
| | that the government gained no such information from interrogating him, including, *e.g.*, information related to the numerous "false alarm bells" rung based upon the false expectation that Petitioner had planned and/or had knowledge regarding future terrorist attacks. *See, e.g.*, Peter Finn, Detainee's Harsh Treatment Foiled No Plots," *Washington Post*, March 29, 2009, at A01 (reporting that no actual plots were foiled based on information from Petitioner); *see also* Ron Suskind, *The One Percent Doctrine* (identifying numerous "false alarms," including, *e.g.*, bombs in shopping malls, etc.). | | |
| 67 | Disclose evidence tending to demonstrate that Petitioner was involved in charitable works, including assisting women, children and orphans, including the following: | | |
| a. | Information substantiating Petitioner's social service work, including the establishment of parochial schools for children and/or providing other social services for orphans and widows. *See, e.g.*, Petitioner's Diary, Vol. VI, at 6. | Deny | Denied |
| b. | Information related to Petitioner's and/or Khaldan's role in relation to the "Service Bureau," including how this operation was wholly unrelated to and dissimilar from the operations run by Osama bin Ladin and/or al Qaeda. | Deny | Denied |
| 68 | Evidence that casts doubt on the reliability of particular statements relied upon by Respondent to support the allegation that after September 11, 2001, Petitioner actively associated himself with "enemy forces" and directly aided them in hostilities against Coalition forces, including: | | |
| a. | Evidence that tends to undermine Respondent's allegation that Petitioner participated in Osama bin Laden's military and security plan, including statements by Petitioner that he refused to serve as an al Qaeda deputy and/or | Deny | Granted in Part and Denied in Part |

22

| | | | | |
|---|---|---|---|---|
| | | left Khowst because he was pressured to do so. See e.g., Petitioner's unclassified CSRT transcript at 19 (stating that he refused to follow orders from al Qaeda: "For this tell him sorry and I leave. Abu al-Kheir, al Qaeda person, he said this is order of bin Laden. I tell him I am not al Qaeda, to give me order.") | | |
| | b. | Evidence tending to undermine Respondent's allegation that Petitioner actually participated in hostilities against Coalition forces or otherwise supported "enemy forces." | Deny | Granted in Part and Denied in Part |
| 69 | | Evidence tending to undermine Respondents' insinuation that Petitioner's presence in Kandahar during the month of November 2001 was related to the presence of known terrorists in the city at that time, including Adl al Hadi al Iraqi, Abu Hafs al-Masri, Abu Mus'ab al-Zarqawi, and Khaled Shaykh Mohammad, and not for some other purpose. | Deny | Denied |
| 70 | | Evidence from al Qaeda operative Abu al Kheir that corroborates Petitioner's assertion that Petitioner refused an order from Osama bin Ladin to assume a seutiry post in Khost on behalf of al Qaeda. See Petitioner's CSRT Transcript at 10, 19 (explaining that Petitioner refused an order given by Abu al Kheir from Osama bin Ladin to assume a security position on behalf of al Qaeda following 9/11). | Deny | Denied |
| 71 | | Evidence that casts doubt on the reliability of particular statements relied upon by Respondent in connection with [the allegation that Petitioner facilitated the escape of enemy forces], including the following: | | |
| | a. | Evidence tending to undermine Respondent's allegation that Petitioner was responsible for facilitating the retreat and/or escape of enemy forces out of Afghanistan after the Taliban's withdrawal from Kandahar, including, | Deny as to the request for evidence regarding the movement of women, | Granted in Part and Denied in Part |

| | | | |
|---|---|---|---|
| | e.g., information tending to show that Petitioner had no personal responsibility for the movement of any persons out of Afghanistan; that such persons were not "enemy forces;" and/or that Petitioner's alleged assistance was not directed at helping "enemy forces," but rather included the movement of women, children, and other non-combatants. See e.g., Petitioner's unclassified CSRT transcript, at 19 (describing that Petitioner refused to accept al Qaeda orders and instead chose "to help people who nobody care about them," i.e., "another brothers whose [sic] not join any groups and they have bad circumstance of money and their families child in Peshawar or in Afghanistan."). | children, and other non-combatants. | |
| b. | Evidence tending to undermine Respondents' allegation that Petitioner was responsible for sending "enemy forces" to Pakistan and/or Iran without those governments' knowledge after the Taliban's withdraw from Kandahar. | Deny | Granted |
| c. | Evidence tending to undermine Respondents' allegation that, in late January 2002, Petitioner was involved in arranging a ransom to pay for the release of two groups of mujahideen. | Deny | Granted |
| d. | Evidence tending to undermine Respondent's allegation that the persons allegedly ransomed were "enemy combatants," including evidence that the Pakistani and Afghani police arrested them for the sole purpose of obtaining a bounty and/or ransom. See e.g., Abdah, No. 04-1454 (HKK) [Dkt # 477] (D.D.C. Apr. 8, 2008) (ordering disclosure of information regarding the use of bounties). | Deny | Granted in Part and Denied in Part |
| e. | Evidence tending to undermine Respondents' allegation that, during February and March 2002, Petitioner moved from safehouse to safehouse with different groups, including information that any such movement was not organized | Deny | Granted in Part and Denied in Part |

24

| | | | |
|---|---|---|---|
| | by Petitioner, that such persons were no terrorists and/or enemy combatants, and/or that Petitioner was not moving with them. | | |
| f. | Evidence tending to undermine Respondent's allegation that Petitioner acquired a house from the Lashkar-e-Tayyiba group and/or had knowledge that the house was acquired from the Lashkar-e-Tayyiba group. | Deny | Granted |
| g. | Evidence tending to undermine Respondent's allegation that, after September 11, 2001, Petitioner acquired any safehouse in Pakistan at all. | Deny | Granted |
| 72 | Evidence tending to undermine Respondents' allegation that Petitioner was using the Faisalabad house to "harbor" terrorists for a future terrorist cell[,] including evidence obtained from detainees or prisoners in U.S. custody (other than ISN 696, 694, 682, and 707), who were arrested in the Faisalabad guesthouse along with Petitioner revealing their understanding of who was in the house and what they were doing there. | Deny | Granted |
| 73 | Any evidence that corroborates that the computer seized from the Faisalabad house, and which is the subject of Request No. 5, was Petitioner's computer or used by Petitioner. | Deny | Denied |
| 74 | Any evidence that corroborates that the electronic parts and "electronic gun" seized from the Faisalabad house, and which is the subject of Request No. 6, belonged to, were controlled by, or were known to exist by Petitioner. | Deny | Denied |
| 75 | Evidence that casts doubt on the reliability of particular statements in Petitioner's diary and relied upon by Respondent in connection with [the allegation that Petitioner was plotting terrorist operations, including an attack on the United States], including the following: | Deny | Granted |
| a. | Evidence tending to undermine Respondent's allegation that Petitioner | Deny | Granted |

| | | | |
|---|---|---|---|
| | planned and/or intended to carry out the multi-dimensional attack on the United States discussed in his diary. | | |
| b. | Evidence tending to undermine Respondent's allegation that Petitioner had been contemplating and/or planning this attack for years and, approximately one month prior to his capture, had decided it was the "right time" to carry these ideas out. | Deny | Granted |
| 76 | Evidence demonstrating that individuals in Ressam's cell, including Rachid (a.k.a. abu Doha), Mustafa Labsi, Fodail, Hakim, Abu Ahmed, Karim, a.k.a. Said Atmani, had no specific knowledge of Ressam's planned terrorist plot in the United States, which would tend to undermine Respondents' contention that Petitioner would have known about such a plot. (This is also related to Respondents' first allegation against Petitioner.) | Deny | Denied |
| 77 | Provide all writings and drawings created by Petitioner but presently held by U.S. officials that have not previously been disclosed to Petitioner's Counsel. | The Court has ruled on this request in Mem. Order, ECF No. 357. | Granted in Part, Found as Moot in Part |
| 78 | Specifically, provide the following: | | |
| a. | Provide all writings and drawings created by Petitioner while in U.S. custody that have not previously been disclosed to Petitioner's counsel. | The Court has ruled on this request in Mem. Order, ECF No. 357. | Granted in Part, Found as Moot in Part |
| b. | Provide the notebook created by Petitioner and containing a list of names identifying, inter alia, the people to whom Petitioner gave money after their husbands, brothers, and fathers were killed fighting the communists. This notebook was seized when Petitioner was arrested. | The Court has ruled on this request in Mem. Order, ECF No. 357. | Granted in Part, Found as Moot in Part |
| c. | Provide the notebook created by Petitioner and containing a catalog of significant dates and events, listed in chronological order. | The Court has ruled on this request in Mem. | Granted in Part, Found as Moot in |

26

| | | Order, ECF No. 357. | Part |
|---|---|---|---|
| d. | Provide the notebook created by Petitioner containing information regarding important individuals in Petitioner's life, including, inter alia, his former business partner and the names of families with whom petitioner stayed in his travels. | The Court has ruled on this request in Mem. Order, ECF No. 357. | Granted in Part, Found as Moot in Part |
| 79 | All medical and mental health records relating to Petitioner, in whatever form, which were created or maintained during Petitioner's detention in CIA custody to assist Petitioner's medical and mental health experts in evaluating the cause and severity of Petitioner's present cognitive impairments. | Deny | Moot. *See* Mem. Op. and Order, ECF No. 549 |
| 80 | Allow an in-person examination by independent medical and mental health professionals to permit them to ascertain the cause and severity of Petitioner's present mental state and cognitive impairments. | Deny | Moot. *See* Mem. Op. and Order, ECF No. 549 |
| 81 | Documents corroborating Respondents' allegations that Petitioner "facilitated" through financial support or transactions terrorist activities or persons affiliated with or supported by al Qaeda, including: | Deny | Denied |
| a. | Bank statements or credit card statements for any financial or credit account in which Petitioner is alleged to have a financial interest, signatory authority or other authority | Deny | Denied |
| b. | Financial statements, charts of accounts, journal entries or other accounting or financial records which were related to Petitioner's alleged activities as a "facilitator" for Khalden or for persons seeking to engage in terrorist activities. | Deny | Denied |
| 82 | Any financial records corroborating Respondent's second allegation that Petitioner "carried" $50,000 for terrorist operations against Israel, including proof that Petitioner had such a sum of money. | Deny | Denied |

27

| 83 | All documents, including financial records or statements, which support or reveal the basis for the Treasury Department's designation of Petitioner as a "Specially Designated Global Terrorist" and its decision to freeze his assets. | Deny | Denied |
|----|------|------|------|
| 84 | Interrogatory to Respondent: Provide the account name, financial institution, and all other identifying information, for any financial account identified by Respondent in which Petitioner is alleged to have a financial interest, signatory authority, or other authority. | Deny | Denied |
| 85 | Interrogatories to detainees Khaled Shayk Mohammed, Ramzi bin Al Shibh, and Abd Al Rahim al Nashiri, who are members of al Qaeda with high level operational responsibilities and detailed knowledge of al Qaeda's structure, operations and terrorist plans. Petitioner requests the following interrogatories be put to these detainees, in order to undermine Respondents' repeated assertion that Petitioner, or the Khalden camp, had an association or operational ties to al Qaeda or Osama bin Ladin or that Petitioner specifically planned to meet with Khaled Shaykh Mohammed: | | |
| a. | What do you know about Petitioner's work in Pakistan from 1994-2002? | Deny | Denied |
| b. | Was Petitioner part of, associated with, a member of, or a supporter of al Qaeda? Did Petitioner take orders from Osama bin Ladin or other al Qaeda officials to plan or carry out operations on behalf of al Qaeda? | Deny | Granted |
| c. | Was the Khalden camp associated with or supportive of al Qaeda camps? Did it have the same mission as al Qaeda camps? | Deny | Granted |
| d. | Did Petitioner or the Khalden camp train Muslims to take part in terrorist operations planned by al Qaeda? Did Petitioner have any role in coordinating military or terrorist training with Osama bin Ladin for al Qaeda operations? | Deny | Granted |
| e. | Was Petitioner asked or ordered by al | Deny | Granted |

28

| | | | |
|---|---|---|---|
| | Qaeda or Osama bin Ladin to guide al Qaeda members of out Afghanistan after September 11? | | |
| f. | To Khaled Shaykh Mohammed only: did you meet or have plans to meet with Petitioner near Kandahar in November 2001, and if you did, for what purpose. | Deny | Granted |
| 86 | Information documenting procedures Petitioner allegedly employed when he "ran" guesthouses and their operational function. See Decl. [REDACTED] at 3 (attached as an exhibit to Respondent's Factual Return and indicating that different guesthouses may serve different functions). This includes at a minimum, an unredacted copy of the almost entirely redacted document [REDACTED]. This request is significantly more narrowly tailored than requests that have been granted in other habeas cases. *See, e.g., Al-Adahi v. Obama*, 05-280 (GK) [Dkt #326] (D.D.C. Apr. 6, 2009) (ordering disclosure of all documents that refer to a guesthouse that date to the period of time when Petitioner is alleged to have stayed there). | Deny | Granted in Part and Denied in Part |
| 87 | Information, including instructional material, used at Khalden in the government's possession and which supports the claim that the training provided there was "terrorist training." See, e.g., Petitioner's unclassified CSRT transcript (in which Petitioner states that the training materials used a Khalden were old copies of U.S., Russian, and other national military manuals); see also Decl. [REDACTED] (indicating that terrorist training manuals may have been "recovered" by the government). The government bases its detention authority on a claim that Petitioner was involved in "terrorist training" but has failed to offer any support or substance to the assertion that such training occurred at Khalden. Accordingly, there is good cause to | Deny | Denied |

| | | | |
|---|---|---|---|
| | obtain such material in order to rebut the allegation that Khalden provided "terrorist training." | | |
| 88 | Any evidence that corroborates that the "training materials" that are the subject of Request No. 3 are linked to Petitioner, relate to terrorist training, or the organization of a new terrorist cell. | Deny | Denied |
| 89 | Any evidence that corroborates that the training manual that is the subject of Request No. 11 was ever in Petitioner's control or that Petitioner was aware said manual. In addition, any evidence that corroborates the time in which said manual was written, by whom, and all evidence supporting the allegation and [sic] Derunta was a terrorist training facility. | Deny | Denied |
| 90 | Information used to support the portion of [REDACTED] Declaration on Training Camps that pertains to Khalden, *see* [REDACTED] Decl. at 7-8, and Derunta, *see* [REDACTED] Decl. at 4 (referring to Petitioner has [sic] a "senior al Qaida facilitator and operative" and a "senior operative and facilitator at the Derunta training camp," (without citing any support for these propositions). [REDACTED] Decl. at 1, [REDACTED] declaration lacks any citation or other substantiation for many of the claims contained therein. Petitioner has good reason to be skeptical of the basis for such conclusions. For example, in the factual return of Barhoumi Sufiyan, which refers to Petitioner as a "senior al Qaida leader," the only government source for this information is based on an internet newspaper called the *Karachi Dawn. See* Sufiyan Factual Return at 12. Thus, in order to adequately challenge the reliability of [REDACTED] allegations concerning Khaldan and Derunta, it is necessary for Petitioner to know the source[s] from which the information is derived. | Deny | Denied |

| | | | |
|---|---|---|---|
| 91 | Documents supporting the otherwise totally unsubstantiated assertion that Petitioner attempted to finance a terrorist operation in Israel and had vague plans to finance some "other" operation, including: | | |
| a. | Documents revealing how the $50,000 was allegedly "carried;" documents revealing to whom, if anyone, such money was allegedly received and/or delivered and how much was actually used, if at all; documents specifying what alleged "operations against Israel" Petitioner was purportedly supporting; documents evidencing the existence of the "plan" and date of such plan to return to Afghanistan "for additional money," documents specifying what "other jihad operations" and "operations against Israel" Petitioner allegedly planned to carry out. | Deny | Denied |
| b. | Documents supporting Petitioner's designation as a Specially Designated Global Terrorist (SDGT). *See also* Decl. [REDACTED] at 11 (attached as an exhibit to Respondent's Factual Return and identifying documents, such as an administrative record of the target, which exist to support each SDGT designation). | Deny | Denied |
| c. | Documents supporting Petitioner's inclusion on the Annex to Exec. Order 13224. See Narrative at 20, n.11 | Deny | Denied |
| 92 | Information identifying the occupants of the guesthouse when the government conducted the raid that led to Petitioner's arrest, including the fate of each of these persons, and information tending to show that each of these persons is not an enemy combatant. See, e.g. [REDACTED] 302 4/18/2003 (identifying specific persons who were arrested by the government during the Faisalabad guesthouse raid). See also Al-Adahi v. Obama, No. 05-280 (GK) [dkt # 326] (Apr. 6, 2009) (ordering disclosure of all documents that refer | Deny | Granted |

| | | | |
|---|---|---|---|
| | to a guesthouse that date to a period of time when Petitioner is alleged to have stayed there). | | |
| 93 | Information substantiating Respondents' allegation that Petitioner had knowledge of, supported, or participated in the following: | | |
| a. | The use of nuclear weapons. | Deny | Denied |
| b. | Attacks on "water, electricity, fuel, and food" sources within the United States. | Deny | Denied |
| c. | Instigating a race war in the United States. | Deny | Denied |
| d. | The use of timed fires to burn forests, field, and/or public buildings and facilities as part of a war against America. | Deny | Denied |
| e. | Explosions at banks, gas stations, busses, trains, trucks, or other identified locations of importance as part of a war against America. | Deny | Denied |
| 94 | Respondents allege that, following the fall of Kandahar, Petitioner moved, or coordinated the movement of "different groups" from "safe house" to "safe house" as part of a claim that Petitioner "facilitated" the retreat of "enemy forces from Afghanistan." Factual Return at 32. Respondents' allegation could not be more broad or more vague. Therefore, Petitioner requests information identifying these "different groups" and their members as well as information demonstrating that such groups constituted "enemy forces" hostile to the United States. | Deny | Denied |
| 95 | Respondents have produced a redacted version of Petitioner's CSRT transcript. It is clear from a reading of that document that it contains both relevant and exculpatory information. Accordingly, the following should be produced: | | |
| a. | A classified, unredacted version of the Verbatim Transcript of Combatant Status Review Tribunal Hearing for ISN 10016. | Deny | Denied |
| b. | All documents reviewed by the | Deny | Denied |

| | | | |
|---|---|---|---|
| | Petitioner's Personal Representative (the soldier who represented in the CSRT). | | |
| c. | All documents generated by Petitioner's Personal Representative in connection with Petitioner's CSRT. | Deny | Denied |
| d. | An audio tape of the CSRT hearing. | Deny | Denied |
| e. | The article written by Petitioner and referenced on page 6 of the Verbatim Transcript that Petitioner wrote to education Mujahideen as to the doctrine of defensive jihad. | Deny | Denied |
| f. | The email referenced on page 6 of the Verbatim Transcript. | Deny | Denied |
| g. | A copy of Memorandum for the President and Members Combat Status Review Trunal [sic] for ISN 10016 reference on page 11 of Verbatim Transcript (There are three separate parts; Part 1, 2, and 3.) | Deny | Denied |
| 96 | Petitioner is mentioned prominently in both the May 2008 report of the Oversight and Review Division of the Office of Inspector General titled "Documents Relating to A Review of the FBI's Involvement in and Observations of detainee Interrogations in Guantanamo Bay, Afghanistan, and Iraq" and the recently released 2004 Report Prepared by Inspector General for the Central Intelligence Agency. On information and belief, said reports contain relevant and exculpatory information relevant to his defense. Accordingly, the following should be produced: | | |
| a. | An unredacted copy of A Review of the FBI's Involvement in and Observations of detainee Interrogations in Guantanamo Bay, Afghanistan, and Iraq (at a minimum the portions pertaining directly to Petitioner). | Deny | Denied |
| b. | A copy of any written instructions and/or orders from Charles Fraham (Acting Deputy Assistant Director for the section that later became the Counterterrorism Division) to Thomas (Ali Soufan) and Gibson(Steve Gaudin) regarding providing *Miranda* warnings to | Deny | Denied |

33

| | | | |
|---|---|---|---|
| | Petitioner or what to do "if the CIA began using techniques that gave the agents discomfort." (pp. 67-68 of FBI report). | | |
| c. | A copy of the description provided by Thomas (Ali Soufan) to OIG regarding the techniques "that he saw the CIA interrogators use on Zubaydah after they took control of the interrogation that includes the approximate date(s) (p. 68 of FBI report). | Deny | Denied |
| d. | Any documents that reference the names of the individuals who constituted "the highest levels [of government] who had approved the interrogation techniques being used by the CIA (p. 69 of the FBI report). | Deny | Denied |
| e. | Any documents that mention or refer to a telephone conversation between Thomas (ali Soufan) and FBI Counterterrorism Director Pasquale D'Amuro regarding Thomas's (al Soufan.s" "concerns about the CIA's methods" (p. 69 of FBI report). | Deny | Denied |
| f. | Any documents that mention or refer to "instructions" from Counterterrorism Director Pasquale D. Amuro to Thomas (ali Soufan) and Gibson (Steve Gaudin) to "come home and not participate in the CIA interrogation" (p. 69 of FBI report). | Deny | Denied |
| g. | Any documents that mention or refer to the questions asked of Petitioner in each interrogation session. | Deny | Denied |
| h. | Any documents that mention or refer to the answers to questions provided by Petitioner in each interrogation session. | Deny | Denied |
| i. | Any documents generated while Petitioner was [redacted] that mention or refer to the possibility that Petitioner was not a member of al Qaeda. | Deny | Denied |
| j. | Any documents generated while Petitioner was not [redacted] including any occasion when Petitioner was being | Deny | Denied |

34

| | | | |
|---|---|---|---|
| | transported, that mention or refer to the possibility that Petitioner was not a member of al Qaeda. | | |
| k. | Any documents that mention or refer to the reason(s) why Gibson (Steve Gaudin) remained [REDACTED] "until some time in early June 2002, several weeks after Thomas [ali Soufan] left" (p. 69 of FBI report). | Deny | Denied |